Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| ADMINISTRACIÓN DE SERVICIOS DE SALUD DE PUERTO RICO<br><br>RECURRIDO<br><br>V.<br><br>FIRST MEDICAL HEALTH PLAN, INC.<br><br>RECURRENTE | | *Revisión Judicial* procedente de la Administración De Seguros De Salud<br><br>Querella Núm. 24-ML-04-807 |
| _____ | KLRA202400462<br><br>Consolidado con<br><br>KLRA202400464 | _____ |
| ADMINISTRACIÓN DE SERVICIOS DE SALUD DE PUERTO RICO<br><br>RECURRIDO<br><br>V.<br><br>FIRST MEDICAL HEALTH PLAN, INC.<br><br>RECURRENTE | | *Revisión Judicial* procedente de la Administración De Seguros De Salud<br><br>Querella Núm. 24-ML-04-808 |

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, y el Juez Rodríguez Flores.

Pagán Ocasio, juez ponente

## SENTENCIA

En San Juan, Puerto Rico, a 28 de agosto de 2024.

### I.

El 20 de agosto de 2024, First Medical Health Plan, Inc. (First Medical o parte recurrente) presentó los *Recursos de revisión judicial* de epígrafe. En los mismos solicitó que revoquemos una *Orden* emitida por la Administración de Servicios de Salud de Puerto Rico (ASES o foro recurrido) el 24 de julio de 2024, notificada y archivada

Número Identificador
SEN2024_____

ese mismo día.[1] Mediante la *Orden*, emitida en el procedimiento administrativo de la *Querella Núm. 24-ML-04-807*, la ASES declaró No Ha Lugar una solicitud de desestimación promovida por First Medical en contra de la querella y una multa que le fue impuesta. Este primer recurso recibió el alfanumérico KLRA202400462.

Ante nos, solicitó que declaremos la invalidez del procedimiento cursado en su contra e invalidemos la multa que le fue impuesta.

Ese mismo día, First Medical presentó otro *Recurso de revisión judicial* en el que solicitó que revoquemos una *Orden* emitida por la ASES en la misma fecha del 24 de julio de 2024, notificada y archivada ese mismo día.[2] Mediante el dictamen, emitido en el procedimiento de la *Querella Núm. 24-ML-04-808*, casi idéntica a la determinación impugnada en el KLRA202400462, el foro recurrido declaró No Ha Lugar una moción de desestimación promovida por la parte recurrente. En esta ocasión, el recurso recibió el alfanumérico KLRA202400464.

Ante nos, reiteró que procedía declarar inválido el proceso iniciado por la ASES, así como la multa impuesta en su contra. A esos efectos, le imputó al foro recurrido los mismos errores plasmados en el KLRA202400462.

Junto a ambos recursos, la parte recurrente radicó sendas *Mociones urgentes solicitando paralización del procedimiento administrativo* en las que solicitó que ordenáramos la paralización del proceso ante la ASES hasta tanto se dilucidara los casos a nivel apelativo.

El 21 de agosto de 2024, emitimos una *Resolución* en la que ordenamos la consolidación del KLRA202400462 y el

---

[1] Apéndice del *Recurso de revisión judicial* KLRA202400462, Anejo 12, págs. 61-62.
[2] Apéndice del *Recurso de revisión judicial* KLRA202400464, Anejo 9, págs. 72-73.

KLRA202400464 por tratarse de una misma controversia. Asimismo, declaramos No Ha Lugar las solicitudes de orden en auxilio de jurisdicción que acompañaron ambos casos.

Además, y como cuestión de umbral, debemos mencionar que la Regla 7 (B) (5) del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII-B, R. 7 (B) (5), le confiere a este foro la facultad para prescindir de escritos en cualquier caso ante su consideración con el propósito de lograr su más justo y eficiente despacho. Dadas las particularidades de este caso, prescindimos de la comparecencia de la ASES.

En adelante, pormenorizamos los hechos procesales relevantes a la presentación de los recursos de epígrafe.

**II.**

La controversia de marras tiene su génesis el 12 de abril de 2024 cuando la ASES notificó dos cartas a First Medical: una, titulada *Notice to impose fines to First Medical Health Plan – Failure to comply with payment to providers in accordance Articles 16 and 18 of the Plan Vital Contract*,[3] y la otra, titulada *Re: Imposición de multa a First Medical Health Plan – incumplimiento con el pago de tarifa de servicio médico y las cláusulas 10 y 16 del Contrato Vital*[4].

En la primera de las misivas, la ASES expresó que, producto de una investigación motivada por un referido, encontró que, desde febrero de 2023 hasta enero de 2024, First Medical incumplió con ciertas métricas de pago de reclamaciones establecidas en el contrato del Plan de Salud del Gobierno de Puerto Rico (Plan Vital), suscrito entre las partes. En lo pertinente, consignó el siguiente trámite entre la agencia y la parte recurrente:

> The PRHIA Compliance Office through the Office of Clinical Operations and Planning received a referral. Which initiated an investigation into an alleged pattern of non-compliance with the metrics of Claims Report #11 submitted by First Medical Health Plan (FMHP), in accordance with

---

[3] Apéndice del *Recurso de revisión judicial* KLRA202400462, Anejo 1, págs. 1-8.
[4] Apéndice del *Recurso de revisión judicial* KLRA202400464, Anejo 1, págs. 1-8.

Article 16 of the Vital Contract, that sets the provisions for timely payment of Clean Claims. This report is required to be submitted on a monthly basis in accordance with the Reporting Guide set forth in the contract entered between PRHIA and FMHP, known as the Vital Contract, in accordance with Article 18 which states that FMHP shall submit all reports to PRHIA in the manner and format prescribed in the Reporting Guide. After evaluating this report, it was identified that FMHP has not met the metrics established in the Contract for the months of February 2023 to December 2023, as well as January 2024. According to the non-compliance Report submitted by the PRHIA Office of Compliance, significant discrepancies were identified in the metrics associated with provider claims processing.

Based on this referral, and upon request from prior notices of non-compliance seeking a corrective action plan (CAP). On April 20, 2023, the PRHIA's Office of Clinical Operations and Planning received from FMHP a CAP, for processed claims findings and pending claims.

The CAP notified that the claims for the month of February 2023, identified a total of twenty-two thousand two hundred and five (22,205) fully denied claims and two hundred and seventy-four thousand nine hundred seventy-one (274,971) adjudicated claims, which represents 8% of unresolved claims. It also mentioned that, in compliance with the PRHIA guidelines of the "Fee Schedule" regulatory letter, they had to make some required modifications and adjustments to the providers' rate configurations. For this reason, the claims were held until the rate updates were finalized. According to FMHP, this resulted in an increase in the number of pending claims, which impacted on the percentage of unresolved claims. FMHP emphasized that this volume would gradually decrease as they continue to manage claims appropriately.

On May 22, 2023, the Office of Clinical Operations and Planning sent FMHP a CAP due to the findings of clean claims payment timelines for the month of April 2023, FMHP stated that it would continue to move claims using the payment cycle and that PRHIA should expect improvements by the end of July 2023. This information is part of the CAP sent by FMHP to the PRHIA Office of Clinical Operations and Planning in April 2023, regarding the CAP sent for the incompliance by FMHP for the month of February 2023. In addition, FMHP sent a response to PRHIA, indicating that FMHP submitted a response to the findings noted in the CAP received in May 2023. It referenced that in the CAP they would carry out the necessary measures to address the issues and that they are actively working on the implementation of the required actions to ensure compliance.

However, on the letter submitted to the PRHIA Compliance Office on October 11, 2023, FMHP notified that they will not meet the metrics of Claims Report #11, for the months of February through June 2023. Therefore, PRHIA requested FMHP to submit a detailed explanation to justify non-compliance with the established contractual metrics and was also instructed to submit a CAP. On October 20, 2023, FMHP submitted to the Office of Compliance, a CAP stating that to properly implement the new Fee Schedule rate retroactively to apply the correct rate to claims. Claims were held until all system changes were properly configured to avoid incorrect payment to providers, resulting in an

increase in the metrics of that category. Additionally, it stated that FMHP assigned additional staff to improve claims adjudication, so that the results were efficient, and paid in accordance with the payment cycles. FMHP, emphasized that improvement will be visible in October and November 2023 and will have the expected metrics by December 2023. PRHIA notified FMHP that the deadline for compliance was December 1, 2023. On January 23, 2024, PRHIA sent FMHP a letter following up on the CAP, since the December 1, 2024, deadline passed.

The PRHIA Compliance Office received a communication from FMHP in reply to the follow-up and it reflected the same incompliance identified in past communications.

Based on the facts reported above, on March 4, 2024, the Office of Compliance issued a *Non-Compliance Report number 09-24-002-1, #11 Claims Activity First Medical Health Plan.* Said report included two appendixes: A) *Action Undertaken in the Investigation*; and B) *Reference and Important Research Documents.* The report and appendixes outline the procedure followed by the Office of Compliance and which is the basis for the facts and findings in the instant notice and are made part of this notice.[5]

Por ello, concluyó que la parte recurrente incumplió los Artículos 16 y 18 del contrato del Plan Vital y que se le debían imponer sanciones por su repetido incumplimiento con los requerimientos de información de la ASES. En consecuencia, le impuso una multa total de $180,000.00, la cual consistió en $20,000.00 por cada uno de los nueve (9) meses de incumplimiento con las métricas requeridas.

Asimismo, le advirtió a First Medical sobre el proceso estatuido para la revisión de la determinación en el Artículo 12 del *Reglamento para la imposición de multas y sanciones económicas y para establecer el procedimiento para la resolución y adjudicación de querellas relacionadas*, Reglamento Núm. 8446 de 3 de febrero de 2014, ASES (Reglamento Núm. 8446).

En la segunda carta, objeto de revisión, la ASES comunicó que, producto de un referido sobre incumplimiento con el pago a un proveedor de servicios médicos, concluyó que First Medical incumplió con los pagos a ese proveedor, en violación de dos

---

[5] Íd., págs. 5-7. (notas al calce omitidas).

cláusulas del Contrato Vital. En concreto, la misiva reseñó el siguiente trámite:

> El 13 de octubre de 2023, la Oficina de Cumplimiento de ASES, mediante comunicación vía correo electrónico le solicitó a FMHP, que en o antes de 16 de octubre de 2024 aclarara si las alegaciones de incumplimiento con el pago MFS hechas por el Dr. Casiano son correctas. FMHP, en respuesta indicó que continuaba recopilando información, que estaban en comunicaciones con el proveedor y que le otorgarían unos días adicionales para ello. ASES le otorgó dicha prorroga y el 19 de octubre de 2024, FMHP indicó en comunicación que la alegación del Dr. Casiano era correcta y que se encontraban en proceso de validar una solicitud de ajustes y reclamaciones del proveedor. A modo de seguimiento, el 23 de octubre de 2023, la Oficina de Cumplimiento se comunicó con el Dr. Casiano para validar los periodos en que se confrontan problemas y si fue corregido. El doctor indicó, que el periodo con problemas fue de enero a junio de 2023, y que seguía confrontando problemas con los pagos que en ese momento ascendían a cuarenta mil ($40,000) dólares.
>
> El 26 de octubre de 2023, la Oficina de Cumplimiento vía correo electrónico le solicitó al Dr. Casiano evidencia de las facturas pendientes a pagar por FMHP y toda documentación que sustentara su reclamación. La Oficina de Cumplimiento recibió por parte del Dr. Casiano las diligencias realizadas con FMHP referente a las facturas pendientes y se identificaron cuatrocientas treinta y seis (436) reclamaciones a ser procesadas por diferencia de tarifa. El 10 de noviembre de 2023, ASES le solicitó a FMHP todas las reclamaciones del Dr. Casiano. Incluyendo las de papel y sin facturar manualmente en el sistema del año 2023. El 13 de noviembre de 2023, se recibió información por parte del Dr. Casiano de ocho (8) facturas manuales y setenta y seis (76) facturas *"on hold"* con un total de facturas a pagar por FMHP que suman diecisiete mil ciento setenta y uno con sesenta y cinco dólares y sesenta y cinco centavos ($17,171.65).
>
> La Oficina de Cumplimiento el 16 de noviembre de 2023, le envió a FMHP una solicitud de sus estados de reclamaciones pendiente de pago de MSF del Dr. Casiano y un informe de progreso sobre la resolución de los pagos realizados al proveedor. FMHP, respondió a la solicitud, envió el informe cronológico, un contrato firmado con el Dr. Casiano y una remesa de pago del 3 de noviembre de 2023, de los meses de enero a junio 2023. Luego de una revisión de la información suministrada, la oficina de cumplimiento se percató que el contrato enviado fue del 2018. Por tal razón, el 28 de noviembre de 2023, se le solicitó a FMHP copia del contrato modelo aprobado por ASES, al igual que su anejo de compensación del contrato vigente del proveedor. Mediante comunicación del 29 de noviembre de 2023, FMHP remitió lo solicitado, de lo cual se desprende que el anejo de compensación aplicable al proveedor – a saber, anejo de compensación tiene fecha de efectividad del 1 de enero de 2023.[6]

---

[6] Apéndice del *Recurso de revisión judicial* KLRA202400464, Anejo 1, págs. 5-6.

Por su incumplimiento, le impuso una multa total de $120,000.00, comprendida por $20,000.00 por cada mes no pagado de enero a junio de 2023. Al igual que en la primera carta, en esta ocasión, incluyó la advertencia sobre el derecho de la parte recurrente a solicitar la revisión de la determinación.

**Trámite procesal del KLRA202400462**

Inconforme con la primera de las cartas, el 26 de abril de 2024, First Medical presentó ante la ASES una misiva titulada *First Medical Health's Plan, Inc.'s Objections to Notice to Impose Fines to First Medical Health Plan – Failure to Comply with Payments to Providers in Accordance with Articles 16 and 18 of the Plan Vital Contract and Request for Administrative Review* en la que objetó las conclusiones de la agencia y solicitó que se dejara sin efecto la multa impuesta y que se autorizara la revisión administrativa de la determinación.[7]

En una *Moción anunciando representación legal y en solicitud de término*, fechada el 14 de mayo de 2024, la ASES solicitó un término adicional para familiarizarse con el expediente.[8]

Luego, en una moción titulada *Answer to First Medical Health Plan's Objections to Notice to Impose Fines to First Medical Health Plan – Failure to Comply with Payment to providers in Accordance to Articles 16 and 18 of the Plan vital Contract and Request for Administrative* Review, con fecha del 23 de mayo de 2024, la ASES contestó las alegaciones realizadas por First Medical y solicitó que la acción fuera desestimada.[9]

Posteriormente, el 14 de junio de 2024, First Medical radicó una moción titulada *Motion to dismiss, Annulment of Proceedings and Request for Suspension of Hearing* en la que solicitó que se

---

[7] Apéndice del *Recurso de revisión judicial* KLRA202400462, Anejo 3, págs. 28-41.
[8] Íd., Anejo 4, págs. 42-43.
[9] Íd., Anejo 7, págs. 46-49.

desestimara la querella en su contra y declarara inválida la multa impuesta por la ASES.[10] Según adujo, la actuación de la agencia incumplió con el Art. 13 del Reglamento Núm. 8446, *supra*, págs. 13-14, al no atender, mediante resolución, la primera moción de First Medical dentro del término de cuarenta y cinco (45) días reglamentado para ello. Por eso, reclamó que ese proceder fue arbitrario, *ultra vires* y contrario al debido proceso de ley. En consecuencia, planteó que la multa no era ejecutable y que correspondía que el foro recurrido se declarara sin jurisdicción.

El 24 de julio de 2024, el foro recurrido emitió, notificó y archivó la *Orden* cuya revisión se solicita en la que declaró No Ha Lugar la solicitud de desestimación promovida por First Medical y dictó varias órdenes a las partes para la continuación del caso.[11]

En desacuerdo, el 20 de agosto de 2024, First Medical radicó ante nos el primero de los recursos de epígrafe y le imputó al foro recurrido la comisión de los siguientes errores:

1. ERRÓ ASES AL DICTAR UNA ORDEN DECLARANDO NO HA LUGAR LA MOCIÓN DE DESESTIMACIÓN DE FIRST MEDICAL CUANDO CARECÍA YA DE JURISDICCIÓN EN LA QUERELLA DE EPÍGRAFE POR HABER INCUMPLIDO EL REGLAMENTO NÚM. 8446 DE ASES *PARA LA IMPOSICIÓN DE MULTAS Y SANCIONES ECONÓMICAS Y PARA ESTABLECER EL PROCEDIMIENTO PARA LA RESOLUCIÓN Y ADJUDICACIÓN DE QUERELLAS RELACIONADAS.* TODO ELLO EN VIOLACIÓN DEL DEBIDO PROCESO DE LEY DE FMHP [FIRST MEDICAL HEALTH PROVIDER].

2. ERRÓ ASES AL DICTAR UNA ORDEN ESTABLECIENDO EN LA QUERELLA DE EPÍGRAFE UN PROCEDIMIENTO ESPECIAL O *SUI GENERIS* DE IMPOSICIÓN DE MULTAS NO RECOGIDO EN EL REGLAMENTO NÚM. 8446 DE ASES *PARA LA IMPOSICIÓN DE MULTAS Y SANCIONES ECONÓMICAS Y PARA ESTABLECER EL PROCEDIMIENTO PARA LA RESOLUCIÓN Y ADJUDICACIÓN DE QUERELLAS RELACIONADAS.* TODO ELLO EN VIOLACIÓN DEL DEBIDO PROCESO DE LEY DE FMHP [FIRST MEDICAL HEALTH PROVIDER].

Es su contención que, debido a que la ASES alegadamente incumplió con el Art. 13 del Reglamento Núm. 8446, *supra*, al no

---

[10] Íd., Anejo 8, págs. 50-56.
[11] Íd., Anejo 12, págs. 61-62.

emitir una *Resolución* atendiendo su objeción, la agencia administrativa quedó privada de jurisdicción para continuar el procedimiento adjudicativo y perdió autoridad para hacer cumplir la multa impuesta, la cual debía ser anulada. Según plantea, los pasos seguidos posteriormente por la ASES crean un procedimiento especial, *ultra vires*, no comprendido en el referido Reglamento.

Más aún, aduce que, aunque la *Orden* recurrida no es una determinación final de la ASES, debemos atender la controversia por la clara falta de jurisdicción de la agencia administrativa y la alegada violación sustancial de derechos constitucionales de First Medical.

**Trámite procesal del KLRA202400464**

Inconforme con la segunda de las cartas, el 26 de abril de 2024, First Medical presentó una misiva titulada *Re: Imposición de multa a First Medical Health Plan – incumplimiento con el pago de tarifa de servicio médico y las cláusulas 10 y 16 del Contrato Vital* en la que, además de objetar la multa, solicitó que se dejara sin efecto su imposición y que se señalara una vista administrativa.[12]

En una *Respuesta a Carta de First Medical Health Plan ("FMHP") objetando imposición de multa por incumplimiento con el pago de tarifa de servicio médico y cláusulas 10 y 16 del Contrato de Vital*, fechada el 23 de mayo de 2024, la ASES contestó las alegaciones de la parte recurrente en su primera misiva y solicitó que, luego de celebrarse una vista administrativa, se declarara Sin Lugar la petición de revisión.[13]

El 14 de junio de 2024, First Medical presentó una *Moción de desestimación y nulidad de los procedimientos* en la que repitió su planteamiento levantado respecto a la *Querella Núm. 24-ML-04-807* y, en consecuencia, solicitó que se desestimara la *Querella Núm. 24-*

---

[12] Apéndice del *Recurso de revisión judicial* KLRA202400464, Anejo 3, págs. 28-43.
[13] Íd., Anejo 5, págs. 58-60.

*ML-04-808* por falta de jurisdicción ante el incumplimiento de la ASES con su propia reglamentación.[14]

El 3 de julio de 2024, el foro recurrido emitió una *Orden* en la que le concedió a la ASES un término de veinte (20) días para presentar su posición sobre la desestimación solicitada por First Medical.[15]

En una *Oposición a Moción de desestimación y nulidad de los procedimientos*, fechada el 23 de julio de 2024, la ASES solicitó al foro recurrido que declarara Sin Lugar la solicitud de desestimación y decretara la continuación de los procedimientos.[16] Para sostener su contención, argumentó que se siguió el proceso estatuido en el Art. 8 del Reglamento Núm. 8446, *supra*, págs. 9-10, sobre la imposición de multas y sanciones.

El 24 de julio de 2024, el foro recurrido emitió, notificó y archivó la *Orden* impugnada en la que declaró No Ha Lugar la desestimación y dictó varias órdenes a las partes para la continuación de los procedimientos.[17]

En desacuerdo, el 20 de agosto de 2024, First Medical presentó el segundo de los recursos de epígrafe y le imputó al foro recurrido la comisión de los mismos dos errores que le atribuyó en el primer caso. Por tratarse de los mismos errores y planteamientos de derecho, prescindimos de volverlos a reseñar en esta ocasión.

En adelante, pormenorizaremos el derecho aplicable a la controversia presentada.

### III.

### A.

La *Ley de la Judicatura del Estado Libre Asociado de Puerto Rico de 2003,* Ley Núm. 201 de 2003, según enmendada, 4 LPRA

---

[14] Íd., Anejo 6, págs. 61-68.
[15] Íd., Anejo 7, pág. 69.
[16] Íd., Anejo 8, págs. 70-71.
[17] Íd., Anejo 9, págs. 72-73.

sec. 24 *et seq.,* delimita la facultad revisora del Tribunal de Apelaciones. A esos fines, establece que este Tribunal podrá revisar las órdenes y resoluciones finales de las agencias y los organismos administrativos. 4 LPRA sec. 24y. Véase, además, ***ORIL v. El Farmer, Inc.***, 204 DPR 229, 238 (2020). Asimismo, la Regla 56 del Reglamento del Tribunal de Apelaciones, *supra,* R. 56, restringe nuestra jurisdicción revisora a **determinaciones administrativas finales**.

A su vez, la Sección 4.1 de la *Ley de Procedimiento Administrativo Uniforme del Gobierno de Puerto Rico,* Ley Núm. 38 de 2017, según enmendada, 3 LPRA sec. 9671, (LPAU) limita la facultad de este Tribunal, permitiéndole atender solicitudes de revisión de órdenes o resoluciones finales de una agencia administrativa, luego de que se hayan agotado los remedios administrativos correspondientes.

En ese sentido, la normativa jurídica es clara en cuanto a que, para solicitar la revisión judicial de una resolución u orden administrativa ante este Tribunal, la parte interesada debe recurrir de una resolución u orden final. Igualmente, la Sección 4.2 de la LPAU, *supra* sec. 9672, expresamente excluye de nuestra jurisdicción revisora los dictámenes interlocutorios al pautar: "[u]na orden o resolución interlocutoria de una agencia, incluyendo aquellas que se emitan en procesos que se desarrollen por etapas, no serán revisables directamente".

Para identificar la finalidad de un dictamen administrativo, la Sección 3.14 de la LPAU, *supra* sec. 9654, define que las órdenes o resoluciones finales deberán "incluir y exponer separadamente determinaciones de hecho si éstas no se han renunciado, conclusiones de derecho, que fundamentan la adjudicación, la disponibilidad del recurso de reconsideración o revisión según sea el caso". Análogamente, el Tribunal Supremo resolvió en

*Comisionado Seguros v. Universal*, 167 DPR 21, 29 (2006) que "una orden o resolución final tiene las características de una sentencia en un procedimiento judicial, porque resuelve finalmente la cuestión litigiosa y permite su apelación o solicitarse su revisión".

En el caso ***ORIL v. El Farmer, Inc.,*** supra, el Tribunal Supremo reiteró que, tal y como dispone la Sección 4.2 de la LPAU, *supra*, el Tribunal de Apelaciones solo podrá revisar órdenes y resoluciones <u>finales</u> de una agencia administrativa. A esos efectos, expresó que, aunque esa disposición sobre la finalidad de los dictámenes es distinta a la doctrina de agotamiento de remedios administrativos, ambas tienen un alcance análogo y, generalmente, gozan de las mismas excepciones. Íd., pág. 239. Señaló que ambas disposiciones permiten que los tribunales discrecionalmente se abstengan de revisar actuaciones de una agencia gubernamental hasta que ésta emita un dictamen final. Por esa razón, el Tribunal Supremo reconoció varios factores a considerar al momento de preterir la doctrina de agotamiento de remedios administrativos o la doctrina de finalidad de las determinaciones administrativas. Estos son:

> (1) cuando el dar curso a la acción administrativa haya de causar un daño inminente, material, sustancial y no teórico o especulativo;
> (2) cuando el remedio administrativo constituya una gestión inútil, inefectiva y que no ofrece un remedio adecuado;
> (3) cuando la agencia claramente no tiene jurisdicción sobre el asunto y la posposición conllevaría un daño irreparable al afectado, o
> (4) cuando el asunto es estrictamente de derecho. Íd., pág. 240.

Así, de estar presente alguno de estos factores, el foro revisor podrá preterir el trámite administrativo y atender el caso. Íd.

**B.**

El Reglamento Núm. 8446, *supra,* fue promulgado al amparo de la *Ley de la Administración de Seguros de Salud de Puerto Rico,*

Ley Núm. 72 de 1993, según enmendada, 24 LPRA secs. 7001 *et seq.* (Ley Núm. 72-1993) y la LPAU, *supra,* con el fin de establecer el procedimiento para la notificación de la intención de imposición y la determinación de multas y sanciones a las aseguradoras, organizaciones de servicios de salud, proveedores de servicios y otros por violaciones a las leyes y reglamentos bajo la supervisión de la ASES. Arts. 2 y 3, Reglamento Núm. 8446, *supra*, págs. 3-4. Así como esboza el Art. 4 del Reglamento Núm. 8446, *supra*, págs. 4-5, la Ley Núm. 72-1993, *supra,* le otorga a la ASES: (1) la autoridad para administrar un sistema de seguros de salud; (2) la facultad de negociar y contratar con aseguradores; (3) el poder de realizar los actos necesarios y convenientes para llevar a cabo dichos propósitos; y (4) la potestad de imponer multas administrativas, un poder inherente de su autoridad.

A esos efectos, el Art. 6 del Reglamento Núm. 8446, *supra*, págs. 6-7, le brinda a la ASES amplios poderes de investigación previo a la imposición de multas y sanciones. En concreto, preceptúa el poder de realizar investigaciones periódicas y continuas para constatar y verificar el cumplimiento de las aseguradoras con las obligaciones que surjan de los contratos entre las partes o las leyes y reglamentos federales y locales. Íd. Asimismo, le permite realizar investigaciones a raíz de la notificación de una querella o confidencia sobre posibles violaciones por parte de las aseguradoras a contratos, leyes o reglamentos aplicables. Íd. Por ello, faculta a la ASES a: (1) realizar inspecciones de campo; (2) ordenar a las aseguradoras y proveedores de servicios a suministrar todo tipo de información, estudios o documentación relacionada al cumplimiento de obligaciones contractuales, legales o reglamentarias; (3) acudir al Tribunal de Primera Instancia para solicitar órdenes requiriendo al producción de documentos o información solicitada; (4) tomar cualquier otra medida

administrativa o legal para llevar a cabo la investigación de forma expedita y efectiva; y (5) tomar conocimiento de cualquier violación o incumplimiento contractual que surja públicamente o de la cual la ASES advenga en conocimiento, incluso cuando no se haya realizado una investigación previa. Íd.

**Concluida la investigación**, según mandata el Art. 7 del Reglamento Núm. 8446, *supra*, págs. 8-9, si la ASES identifica un posible incumplimiento, entonces deberá remitir a la aseguradora una notificación de intención de imponer el pago de penalidad económica o multa administrativa. Además, dispone que la notificación debe incluir de manera clara y detallada: (1) la cita exacta de la disposición de ley, reglamento o contrato cuya violación se imputa; (2) el tipo de multa y término a imponerse; (3) el fundamento que motiva la imposición; (4) un requerimiento de preparar y someter para aprobación de la ASES un plan de acción correctiva, cuando aplique; y (5) el término con el que cuenta para someter el plan. Íd. Por último, según prescribe, si la ASES determina, dentro de su discreción, que el incumplimiento no puede ser corregido mediante un plan de acción correctiva, se podrá notificar la imposición de multa y sanciones sin notificación previa de la intención. Íd.

Ahora bien, el Art. 8 del Reglamento Núm. 8446, *supra*, en caso de que la investigación realizada **demuestre el incumplimiento** por parte de la aseguradora de sus obligaciones contractuales con la ASES o con las leyes, reglamentos, órdenes e instrucciones administrados por la agencia, esta podrá remitir a la aseguradora una notificación de imposición de multas administrativas. En ella, tendrá que exponer la cita exacta de la disposición cuya violación se imputa, la base que motiva la imposición, la categoría de la violación o el tipo de multa impuesta, la advertencia sobre el derecho a someter una objeción y solicitud

de revisión y la advertencia de que, para poder solicitar una vista administrativa, antes deberá haber presentado su objeción y solicitud de revisión. Íd.

Por último, ante una objeción y solicitud de revisión de la notificación de imposición de multas y sanciones, el Art. 12 del Reglamento Núm. 8446, *supra*, pág. 12, dispone que la ASES deberá seguir el siguiente procedimiento:

a) Quince (15) días a partir de la fecha de depósito en el correo por parte de la Administración de la notificación de imposición de multas y/o sanciones en su contra, el asegurador, organización de servicios de salud, proveedor de servicios, administrador de beneficios de farmacia o cualquier organización intermediaria contratada por aseguradoras podrá objetar la misma y solicitar revisión de dicha notificación a la Administración.

b) El término para presentar la objeción y solicitud de revisión será jurisdiccional y requisito indispensable para la solicitud de celebración de la vista administrativa que en su día pudiera solicitar el asegurador, organización de servicios de salud, proveedor de servicios, administrador de beneficios de farmacia o cualquier organización intermediaria contratada por aseguradoras conforme se dispone en este Reglamento.

c) En todos los casos, la persona designada para recibir dicha solicitud sellará la primera página de la misma, así como la de todos los anejos incluidos con ésta, con expresión clara y legible de la fecha y hora de recibo, su nombre en letra de molde y su firma.

d) En la objeción y solicitud de revisión la entidad promovente de la misma, deberá consignar todos los argumentos de hecho y de derecho y aportar toda la evidencia necesaria que acredite las razones por las cuales no deben aplicarse las multas y/o sanciones notificadas.

e) En sus argumentos de objeción y revisión, el asegurador, organización de servicios de salud, proveedor de servicios, administrador de beneficios de farmacia o cualquier organización intermediaria contratada por aseguradoras deberá ser específico, detallar y seguir, en la medida que le sea posible, el mismo orden en el que le fueron descritas las sanciones en la carta de notificación de sanciones.

f) Expirado el término de quince (15) días a partir de la notificación de imposición de multas y/o sanciones sin que el asegurador, organización de servicios de salud, proveedor de servicios, administrador de beneficios de farmacia o cualquier organización intermediaria contratada por aseguradoras presente su objeción y solicitud de revisión, la notificación de imposición de sanciones se convertirá en la Resolución y Orden Final de

la Administración y desde entonces se considerará final y firme.[18]

Una vez presentadas oportunamente la objeción y la solicitud de revisión, el Art. 13 del Reglamento Núm. 8446, *supra*, dispone que la ASES seguirá el siguiente procedimiento:

a) Una vez recibida la objeción y solicitud de revisión dentro del término y de la forma dispuesta en el Artículo 12 de este Reglamento la Administración procederá a evaluar la misma a tenor con las leyes y reglamentos aplicables y/o a tenor con los términos y condiciones contractuales.

b) Luego de la evaluación de la objeción y solicitud de revisión, la Administración podrá, a su discreción, llevar a cabo cualquiera de las siguientes acciones, además de aquellas que se pacten en el contrato vigente al momento de la imposición de multas y/o sanciones:

　i. confirmar la sanción o multa que se notificó y aplicar las penalidades, multas y daños líquidos que correspondan;

　ii. modificar o enmendar la multa y/o sanción que se notificó;

　iii. desistir de la imposición de la multa y/o sanción, en aquellos casos en que aplique la radicación de un plan de acción correctiva y éste refleje que el asegurador, organización de servicios de salud, proveedor de servicios, administrador de beneficios de farmacia o cualquier organización intermediaria contratada por aseguradoras ha tomado todas las acciones necesarias para corregir las deficiencias e incumplimientos notificados a satisfacción de la Administración.

c) En todos los casos, la Administración notificará al asegurador, organización de servicios de salud, proveedor de servicios, administrador de beneficios de farmacia o cualquier organización intermediaria contratada por aseguradoras su determinación con respecto a la objeción y solicitud de revisión dentro de un término razonable, que no excederá de cuarenta y cinco (45) días, mediante una Resolución que contendrá, según aplique, lo siguiente:

　a. cuando la Administración entienda en su discreción que se ha probado la corrección de las deficiencias e incumplimientos, podrá realizar una expresión de desistimiento de la imposición de las sanciones o multas;

　b. en todos los casos en que se confirme o modifique la multa o sanción, se consignará una determinación de hechos, con especificación de las violaciones y penalidades impuesta en cada una, así como conclusiones sobre el derecho y/u obligaciones contractuales aplicables a los hechos determinados.

　c. cada Resolución contendrá la fecha en que esta se emita por el Director Ejecutivo de la Administración, así como la fecha en que se archive en los autos del caso copia de la misma,

---

[18] Íd.

disponiéndose que en la misma fecha del archivo, debe llevarse a cabo la notificación de la Resolución al asegurador u organización de servicios de salud afectada por la misma.

d. en los casos descritos en el inciso c)ii anterior, la Administración apercibirá al asegurador, organización de servicios de salud, proveedor de servicios, administrador de beneficios de farmacia o cualquier organización intermediaria contratada por aseguradoras, de su derecho a solicitar la celebración de vista administrativa dentro del término jurisdiccional de treinta (30) días, a partir de la fecha de archivo en autos y notificación de la Resolución.

d) Independientemente de que un asegurador, organización de servicios de salud, proveedor de servicios, administrador de beneficios de farmacia o cualquier organización intermediaria contratada por aseguradoras sea objeto de alguna multa y/o sanción económica, incluyendo daños líquidos o multas administrativas, dicha entidad continuará proveyendo los servicios y beneficios cubiertos por el contrato. Lo anterior excluye la situación en que se lleve a cabo la terminación del contrato, conforme a las razones y circunstancias que contractualmente lo permiten o de acuerdo a lo dispuesto en tas leyes y reglamentos aplicables. En los casos de terminación de contrato, el asegurador, organización de servicios de salud, proveedor de servicios, administrador de beneficios de farmacia o cualquier organización intermediaria contratada por aseguradoras deberá cumplir con sus obligaciones contractuales en caso de terminación, deberá garantizar la transición de los servicios y cumplir con todas las leyes y reglamentos locales y federales sobre servicios a los beneficiarios y a los pacientes. Íd.

## IV.

Tras un análisis objetivo, sereno y cuidadoso del expediente del caso y los planteamientos esbozados por First Medical, en correcta práctica adjudicativa apelativa, resulta preciso desestimar los recursos consolidados de epígrafe por falta de jurisdicción. Las órdenes cuya revisión se solicita no son determinaciones administrativas finales de la ASES, sino dictámenes interlocutorios. En estas, el foro recurrido impartió varias instrucciones para la continuación del proceso adjudicativo administrativo tras rechazar una solicitud de la parte recurrente para anular las multas impuestas y desestimar las querellas en su contra. De un examen sosegado del expediente y los argumentos levantados por First Medical surge claramente que no se configura ninguna de las

excepciones que permite preterir la doctrina de finalidad de las determinaciones administrativas. Recordamos, además, que no toda alegación de ausencia de jurisdicción va a tener el efecto de liberar a la parte inconforme de culminar sus gestiones ante la agencia o de obtener una resolución u orden final. Para ello, se requiere un agravio de patente intensidad que justifique desviarse del cauce administrativo. Eso no está presente en este caso.

Así, ante un resultado adverso luego de concluido el proceso adjudicativo administrativo, la parte recurrente podrá reiterar los planteamientos esbozados sobre la procedencia de la multa y la validez del proceso encausado en su contra. El argumento principal de First Medical – que la omisión de ASES de emitir una *Resolución* en respuesta a su objeción le priva de jurisdicción – es esencialmente un asunto de carácter procesal con efectos en derecho, el cual estará mejor servido cuando el caso haya desembocado en una decisión final, de ser necesario.

## V.

Por los fundamentos pormenorizados, se *desestiman* los recursos de revisión judicial presentados por falta de jurisdicción.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones